# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:05cr105

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| **CEDRIC LEE BENTON** | ) | |
| | ) | |

     **THIS MATTER** is before the Court on the defendant's motion to withdraw his guilty plea (Doc. No. 39) and the government's response (Doc. No. 46). For the reasons stated below, the Court finds that the defendant has not stated a fair and just reason to withdraw his plea; therefore, his motion is DENIED.

## I.    PROCEDURAL HISTORY

     On April 25, 2005, the defendant was indicted with a co-defendant on six charges relating to a drug trafficking conspiracy. (Doc. No. 3). The grand jury charged in Count One that the amount of cocaine base involved was 50 grams or more. (Doc. No. 3: Indictment at 1). Counts Two through Six alleged substantive possession with intent to distribute offenses on five different dates in January and February, 2005. (Doc. No. 3: Indictment at 1-3). The government filed an information pursuant to 18 U.S.C. § 851 alleging that defendant was previously convicted of a felony drug offense. (Doc. No. 5). At an initial appearance on May 3, 2005, a magistrate judge informed the defendant that he would face an enhanced sentence based on the filing of such an information.[1] The defendant was detained after a hearing in December 1, 2005. (Doc. No. 9: Order of Detention Pending Trial).

---

[1]This hearing has not been transcribed. However, the Court has reviewed the recording of the hearing.

On July 7, 2005, the defendant filed a plea agreement. (Doc. No. 17). In exchange for the defendant's plea, the government agreed, among other things, to move to dismiss Counts Two through Six and to recommend a three-level reduction for acceptance of responsibility. (Doc. No. 17: Plea Agreement at 1-2). Paragraph 4 of the agreement states that the defendant is aware that he faces no fewer than 10 years and not more than life imprisonment for the offense in Count One, to which he agreed to plead guilty. (Doc. No. 17: Plea Agreement at 1). Paragraph 6 recites the defendant's understanding that the United States Sentencing Guidelines would be used by the Court in determining his sentence, which could be different from his attorney's estimate. (Doc. No. 17: Plea Agreement at 2). In Paragraph 7.a., the defendant stipulated that more than 50 grams of cocaine base was reasonably foreseeable to him. (Doc. No. 17: Plea Agreement at 2). Paragraph 7.e. states that the Career Offender provision of USSG §4B1.1 may be used to determine the defendant's sentence. (Doc. No. 17: Plea Agreement at 2). In Paragraph 15, the defendant stipulated that there was a factual basis for the plea, and agreed that the factual basis could be deferred until sentencing. (Doc. No. 17: Plea Agreement at 4). Paragraph 23 states that the defendant agrees to cooperate with the United States, if, and only if, requested to do so. (Doc. No. 17: Plea Agreement at 5-6). Additionally, Paragraph 24 states that the government, in its sole discretion, would determine whether the defendant had provided substantial assistance warranting a motion to impose a sentence below the mandatory minimum and applicable guideline range. (Doc. No. 17: Plea Agreement at 7).

On July 15, 2005, the defendant entered his guilty plea before a magistrate judge. The defendant took an oath to respond truthfully to the court's questions. (Benton, TR at 2-3). The defendant responded affirmatively that his mind was clear and that he was there to enter a plea

that could not be withdrawn later. (Benton, TR at 4). The mistake in the plea agreement that the defendant was subject to a ten-year mandatory minimum sentence was corrected in open court, and the court informed the defendant that he faced a mandatory minimum sentence of twenty years. (TR at 7-8, 25). After conferring with counsel, the defendant responded affirmatively that he understood that mandatory minimum applied and that he still wished to plead guilty. (Benton, TR at 8-9). The defendant affirmed that he had spoken with his attorney about how the guidelines might apply to his case, and that he understood he would not be allowed to withdraw his plea if the sentence was more severe than he expected. (Benton, TR at 12, 20). The defendant responded affirmatively that he was guilty of Count One. (Benton, TR at 22).

The government explained the terms of the plea agreement, including the defendant's stipulation to the drug quantity involved and government's sole discretion to determine whether the defendant's assistance qualified for a departure motion. (AUSA Broyles, TR at 24-26). The defendant responded affirmatively that he understood those where the terms and that no other promises of leniency or a light sentence had been made to induce his guilty plea. (Benton, TR at 27-28). The defendant responded affirmatively that he was satisfied with the services of his attorney and described him as "good." (Benton, TR at 29-30). The defendant did not ask a question or make a statement when given the opportunity to do so. (Benton, TR at 31). Accordingly, the magistrate judge accepted the plea upon finding that the defendant's plea was entered knowingly and voluntarily, with understanding of the charges, potential penalties, and consequences of the plea. (Magistrate Judge Horn, TR at 34; Doc. No. 20: Entry and Acceptance of Guilty Plea at 5).

On May 4, 2006, nearly ten months after the plea was entered, a letter was received from the defendant listing ten complaints about the performance of his then-counsel Charles Morgan. (Doc. No. 33). The Court directed counsel to respond to the allegations (Doc. No. 32: Order), which counsel did on June 5, 2006 (Doc. No. 34). On July 13, 2006, the Court found a total breakdown in communication had occurred and directed the Community Defender to designate new counsel promptly. (Doc. No. 36: Order). Current counsel Kevin Tate entered his appearance on September 1, 2006. On September 15, 2006, counsel filed the instant motion (Doc. No. 39) to which the government responded (Doc. No. 46).

## II.     LEGAL DISCUSSION

In his motion to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B), the defendant acknowledges his burden to show a "fair and just reason" for withdrawal. (Doc. No. 39: Motion at 4). He claims the plea lacked a factual basis; that the plea agreement was "illusory" and "unconscionable"; that he received ineffective assistance of counsel, including being misadvised of the applicable mandatory minimum sentence; and that the government breached its obligation to move for downward departure under USSG §5K1.1.

A defendant does not have an absolute right to withdraw a guilty plea, even before sentencing, but rather bears the burden of demonstrating that a "fair and just reason" supports his request to withdraw. Fed. R. Crim. P. 11(d)(2)(B); United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). Courts typically consider a variety of factors in determining whether a defendant has met his burden, including: (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of

the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources. Id.

It is well-settled that magistrate judges may conduct Rule 11 proceedings and accept guilty pleas with a defendant's consent. United States v. Osborne, 345 F.3d 281, 285 (4th Cir. 2003); United States v. Graham, 48 Fed. Appx. 458, 459 (4th Cir. 2002)(unpublished opinion). "[A]n appropriately conducted Rule 11 proceeding raises a strong presumption that the plea is final and binding." United States v. Wilson, 81 F.3d 1300, 1306 (4th Cir. 1996). Statements made by a defendant during the course of such a proceeding may not ordinarily be repudiated. Id. at 1308. In fact, a strong presumption of veracity attaches to a defendant's declarations made in open court. United States v. Morrow, 914 F.2d 608, 614 (4th Cir. 1990).

A.     Factual Basis for Plea

Rule 11(b)(3) requires the Court to determine there is a factual basis for plea before entering judgment. Here, the defendant stipulated that there was a factual basis for the plea, and that the factual basis could be deferred until sentencing. (Doc. No. 17: Plea Agreement at ¶ 15). The defendant told the magistrate judge during the Rule 11 hearing that he understood the terms of the plea agreement. (Benton, TR at 27; Doc. No. 20: Entry and Acceptance of Guilty Plea at 4). Further, the defendant admitted that he was, in fact, guilty of the offense to which he pled. (Benton, TR at 22; Doc. No. 20: Entry and Acceptance of Guilty Plea at 3). The description of the offense conduct in the Presentence Report ("PSR") contains facts sufficient to establish a

factual basis for the defendant's plea.[2] (PSR at ¶¶ 7-14).  Therefore, the defendant has failed to establish a fair and just reason to withdraw his guilty plea based on the absence of a recitation of facts before the magistrate judge.  Judgment has not yet been entered, and the defendant expressly stipulated to the existence of a factual basis and agreed to the deferment of its presentation until sentencing.

       B.       Plea Agreement not Illusory or Unconscionable

The defendant claims the plea agreement is unenforceable because it "contained no promises by the government or even slight consideration or benefit to him" rendering it illusory and unconscionable. (Doc. No. 39: Motion at 6).  An illusory promise that is insufficient to form a contract is one which does not bind the promisor to do anything. Hill v. Peoplesoft USA, Inc. 412 F.3d 540, 543 (4th Cir. 2005).  A contract is unconscionable where "gross inadequacy in bargaining power and terms unreasonably favorable to the stronger party exist." American General Life and Acc. Ins. Co. v. Wood, 429 F.3d 83, 88 (4th Cir. 2005).  However, the risk of a more severe punishment after trial does not render a plea bargain involuntary.  Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978).  The Fourth Circuit rejected a claim similar to the defendant's in U.S. v. Cordero, No. 97-4355,  1998 WL 852913, 166 F.3d 334, at *4 (4th Cir. Dec. 10, 1998)(unpublished decision).  In that case, the defendant's plea agreement was standard in the district, the defendant failed to identify any unconscionable term, and the defendant voluntarily entered a guilty plea.  Here, the defendant's argument is without merit because the government's binding concessions are apparent in the plea agreement and

_____

[2]The defendant agreed that the PSR could be used to establish a factual basis. (Doc. No. 17: Plea Agreement at ¶ 15).  The defendant has not filed any objection to the PSR.

resulted in substantial benefit to the defendant.[3]

The government agreed to dismiss Counts Two through Six upon acceptance of the defendant's plea to Count One. Although convictions on the substantive counts may not have affected the defendant's sentence under the guidelines, the Supreme Court has recognized that even convictions that result in concurrent sentences impose adverse consequences on a defendant. Ball v. United States, 470 U.S. 856, 865, 105 S. Ct. 1668, 84 L. Ed.2d 740 (1985). For example, had the defendant been convicted of all six charges, his special assessment would have been $600. Because the government promised to dismiss five charges, his special assessment under the plea agreement would be $100. (Doc. No. 17: Plea Agreement at ¶¶ 2, 12).

More significantly, the government's agreement to recommend a three-level reduction for acceptance of responsibility, if certain conditions were met, could make a substantial difference in the defendant's sentence. According the probation officer's calculations, the defendant qualifies as a career offender.[4] (PSR at ¶ 25). Without any reduction for acceptance of responsibility, the guideline range could be 360 months to life.[5] The defendant would be eligible for a two-level reduction for acceptance of responsibility if the Court finds he has clearly demonstrated responsibility for his offense, pursuant to USSG §3E1.1(a), with a resulting guideline range of 292 to 365 months. Upon motion of the government, the defendant would be

---

[3]It also appears that the defendant's plea agreement conforms to the standard version used in this district. See e.g. United States v. Melvin Burns, WDNC Case No. 3:04cr295 (Doc. No. 28: Plea Agreement). The defendant has not identified any unconscionable term.

[4]By referencing this finding, the Court is not expressing any opinion on whether the calculations in the PSR are correct.

[5]Assuming offense level 37 and criminal history category VI, pursuant to USSG §4B1.1.

eligible for another one-level reduction for timely notifying the government of his intention to plead guilty, pursuant to USSG §3E1.1(b), with a resulting guideline range of 262 to 327 months. Thus, the government's concession in the plea agreement regarding the extra reduction could result in a reduction of 30 to 38 months in the applicable guideline range.

Additionally, the defendant stands to benefit from other promises the government made in the plea agreement. The government agreed that the appropriate sentence would be within the guideline range, giving up its ability to seek an upward departure or variance. (Doc. No. 17: Plea Agreement at ¶ 7.d.). The plea agreement also offered the defendant the possibility of cooperating with the government and the government limited itself to certain permissible uses of information provided by the defendant. (Doc. No. 17: Plea Agreement at ¶ 23). Thus, the defendant received tangible benefits from the government in exchange for his plea, and the defendant's claim that the agreement is illusory and unconscionable is without merit.

C.     Effective Assistance of Counsel

The defendant argues that he should be allowed to withdraw his plea because he received ineffective assistance of counsel. (Doc. No. 39: Motion at 6). To prevail on this claim, the defendant must demonstrate "(1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there was a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." United States v. Bowman, 348 F.3d 408, 416 (4th Cir. 2003) (internal quotations and alterations omitted).

To show former counsel's performance was deficient, the defendant claims he "was encouraged to enter an irrevocable contract that waived his rights with absolutely no benefit in exchange." (Doc. No. 39: Motion at 7). As detailed above, the defendant received certain

tangible benefits from his plea agreement, such as the dismissal of five charges, a reduction in offense level based on acceptance of responsibility, an agreement not to seek upward departure or variance, the opportunity to cooperate, and the limited use of any information he provided to the government. Former counsel, with more than 25 years of legal experience[6], reviewed discovery and determined the issue in the case was sentencing, rather than guilt or innocence. (Doc. No. 34: Response at ¶ 5(c)). From the description of the evidence available to the government, including audio and video taped drug transactions with the defendant (Doc. No. 46 at 8), the Court finds that counsel's performance in securing the benefits in the plea agreement was reasonable under the circumstances of this case.

Although the defendant fails to establish the first required element of his claim, the Court will address the second element. The defendant points to "his letters to the Court requesting new counsel following his plea" as evidence that he would have gone to trial, but for his attorney's alleged incompetency. (Doc. No. 39: Motion at 7). The record does not reflect multiple letters from the defendant following his plea. Only one letter was received by the Court, and that nearly ten months after the plea.[7] (Doc. No. 33). Although the defendant lists specific complaints about his counsel in his letter, he does not indicate that he wished to go to trial. Therefore, the defendant has failed to establish the second required element.

---

[6]Mr. Morgan is a certified criminal law specialist by the North Carolina State Bar, and has worked as an assistant public defender and assistant district attorney. Professional Resume, http://www.criminal-defender.com/resume.htm.

[7]Former counsel for the defendant filed a motion to withdraw following the plea (Doc. No. 21), but then withdrew it (Doc. No. 27). Counsel explained that he withdrew the motion because the defendant changed his mind about the representation. (Doc. No. 34: Response at 3).

D.      Knowing and Voluntary Plea

The defendant claims his plea was not knowing or voluntary because of allegedly coercive erroneous advice he received from former counsel. (Doc. No. 39: Motion at 7). This claim is contradicted by the defendant's statements under oath during the Rule 11 hearing. Other evidence also refutes the defendant's claim that the plea was not knowing and voluntary.

The defendant now claims that his counsel did not advise him that a plea would waive a jury's determination of drug quantity affecting the statutory penalty. (Doc. No. 39: Motion at 2). At the Rule 11 hearing, the defendant testified that he understood the charge, including the alleged drug quantity, and that he understood that he was giving up a jury trial. (Benton, TR at 7, 21-22). Former counsel for the defendant affirmed that he explained the risks and benefits of entering a plea on several occasions. (Doc. No. 34: Response at 2). The defendant now claims that his counsel never explored any defense strategy with him. (Doc. No. 39: Motion at 2-3). However, the defendant previously indicated that he had enough time to discuss any possible defenses with his attorney. (Doc. No. 20: Entry and Acceptance of Guilty Plea at 4).

The defendant now claims that his counsel pressured him to plead guilty; did not inform him that his plea could not be withdrawn; and made promises of leniency and release on bond not reflected in the plea agreement. (Doc. No. 39: Motion at 2-3). In contrast, the defendant told the magistrate judge that no one had threatened, intimidated, or forced him to plead guilty; that he understood that his plea could not be withdrawn; and that no promises other than those in the plea agreement had been made to induce his plea. (Benton, TR at 4, 28-29). Former counsel informed the Court that did not use any tactics to induce the defendant's plea and that he made no promises that the defendant would be released on bond. (Doc. No. 34: Response at 1-2).

The defendant now claims that he was not advised that information he provided could be used against him if he withdrew his plea. (Doc. No. 39: Motion at 3). The Plea Agreement specifies that "any and all disclosures" could be used against him if he withdrew his plea (Doc. No. 17: Plea Agreement at ¶ 7.f.3.), and the defendant testified that he understood and agreed to the terms of the agreement (Benton, TR at 27). Former counsel stated that he reviewed the terms of the plea agreement with the defendant on several occasions. (Doc. No. 34: Response at 2).

The defendant now claims that he was not informed by counsel that he would be subject to the Career Offender guidelines. (Doc. No. 39: Motion at 3). However, the Plea Agreement directly addresses that possibility (Doc. No. 17: Plea Agreement at ¶ 7.e.), and the defendant testified that he understood his sentence could be higher than what he expected (Benton, TR at 20). Finally, the defendant now claims he was misadvised about the applicable mandatory minimum sentence.[8] (Doc. No. 39: Motion at 8). The defendant was first informed that the mandatory minimum sentence could be more than ten years at his initial appearance on May 3, 2005. Although his Plea Agreement states the minimum is ten years, that mistake was corrected in open court and the defendant responded affirmatively that he understood the applicable minimum sentence was twenty years. (TR at 7-8, 25-27). Additionally, because the potential guideline sentence is more than twenty years, any mistake in his Plea Agreement or counsel's advice results in no prejudice to the defendant. Therefore, the defendant has not offered credible evidence that his plea was not knowing and voluntary.

---

[8]The defendant also complains that his counsel did not file objections to the PSR. Since the PSR was not prepared until after the defendant entered his guilty plea, counsel's action regarding any objections could not have affected the defendant's decision to plead guilty.

E.    No Credible Assertion of Legal Innocence

The defendant "contends he is legally innocent of the charge in Count One." (Doc. No. 39: Motion at 8).  This contention, raised more than a year after the defendant's guilty plea, is not supported by the record.  The defendant plainly admitted his guilt during the Rule 11 hearing on July 15, 2005. (Benton, TR at 22).  In his one letter to the Court, received nearly ten months after his guilty plea, the defendant complained about his attorney, but did not claim to be legally innocent of the charge.  (Doc. No. 33).  According to the government, the defendant admitted engaging in drug trafficking with his co-defendant. (Doc. No. 46: Response at 8-9).  Indeed, the defendant takes credit for setting up a drug deal with his co-defendant (Doc. No. 39: Motion at 9), suggesting a pre-existing criminal relationship.  Therefore, the Court finds that the defendant has not credibly asserted his legal innocence.

F.    Delay Between Entry of Plea and Motion to Withdraw

The defendant claims he has "consistently complained" to the Court in his "letters" about his former counsel's alleged ineffectiveness. (Doc. No. 39: Motion at 8).  As noted above, the Court received one letter from the defendant nearly ten months after his guilty plea. (Doc. No. 33).  Although the defendant noted problems with his attorney, he did not seek withdrawal of the plea.  In Moore, the Fourth Circuit found a six-week delay to be too lengthy. 931 F.2d at 248.  Here, the defendant's plea was accepted by the magistrate judge on July 15, 2005. (Doc. No. 20: Entry and Acceptance of Guilty Plea at 5).  The defendant's motion to withdraw his plea was not filed until September 15, 2006, fourteen months later, and after his case had twice been set for sentencing. (Doc. No. 39).  This extensive delay between the defendant's plea and motion to withdraw the plea weighs against granting his request.

G. Close Assistance of Competent Counsel

As detailed above, the performance of former counsel was reasonable under the circumstances. Additionally, the defendant testified that he was satisfied with his then-appointed attorney and even described him as "good." (Benton, TR at 29-30; Doc. No. 20: Entry and Acceptance of Guilty Plea at 4). Therefore, this factor also weighs against the defendant's request.

H. Prejudice to Government and Inconvenience to the Court

There is no direct proof of actual prejudice to the government, but the Court recognizes the potential prejudice to the government if the defendant were allowed to withdraw his plea and the case were set for trial after such a delay.[9] Additionally, the court system has a strong interest in judicial economy. United States v. Wilson, 81 F.3d 1300, 1306 (4th Cir. 1996). Significant resources have already been expended on the defendant's case. Further, because the defendant does not contest his guilt, allowing him to withdraw his plea and sending the case to trial would be a waste of judicial resources.

Thus, all the factors recognized by the Fourth Circuit in Moore weigh against the defendant's request to withdraw his plea and the defendant has presented no evidence to overcome the strong presumption of veracity attached to his responses at the Rule 11 hearing.

I. No Breach by Government

Finally, the defendant asserts that the government breached its obligation to move for downward departure based on substantial assistance because "[t]he government has not

---

[9]The offenses are alleged to have occurred between February 2004 and February 2005. (Doc. No. 3: Indictment). The only co-defendant, Darryl Mills, has already been sentenced. (Doc. No. 48: Judgment).

articulated a rational government objective in not fulfilling Benton's anticipated benefits of the plea agreement." (Doc. No. 39: Motion at 10). The defendant further supports his argument by attempting to show that the government benefitted from his cooperation.

The defendant's claim that the government was obligated to file a downward departure motion is in error. He was clearly informed that the government retained sole discretion whether to move for a downward departure in his plea agreement (Doc. No. 17: Plea Agreement at ¶ 24) and during his Rule 11 hearing (AUSA Broyles, TR at 26). The defendant stated under oath he understood these terms. (Benton, TR at 27). Such a plea agreement places no binding obligation on the government to make the motion. United States v. Wallace, 22 F.3d 84, 87 (4th Cir. 1994). Thus, the defendant can not reasonably claim the government breached a promise to move for downward departure (Doc. No. 39: Motion at 3), because no such promise was made. United States v. Kitchens, No. 98-4175, 1998 WL 610885, 161 F.3d 4, at *2 (4th Cir. Sept. 3, 1998)(unpublished opinion) (defendant expected to be able to cooperate, but was subsequently incarcerated).

Although the government may not have had the duty to move for downward departure, the Court may review its exercise of power in deciding not to. Wade v. United States, 504 U.S. 181, 185, 112 S. Ct. 1840, 118 L. Ed. 2d 524 (1992); United States v. LaRose, 219 F.3d 335, 341-42 (4th Cir. 2000). Such a review is limited to whether the prosecutor's decision was based on an unconstitutional motive, such as race or religion, and is only triggered by a substantial threshold showing by the defendant of improper motive. Wade, 504 U.S. at 186; LaRose, 219 F.3d at 342. Merely establishing that a defendant cooperated is insufficient to warrant a remedy. Wade, 504 U.S. at 187; LaRose, 219 F.3d at 342-43.

14

Here, the defendant catalogs the information he provided to various law enforcement agencies (Doc. No. 39: Motion at 9-10), but does not allege, much less make a substantial threshold showing of improper motivation by the government. Instead, the defendant seeks to shift the burden to the government to articulate a rational government objective for its decision. (Doc. No. 39: Motion at 10). In LaRose, the Fourth Circuit found such burden shifting impermissible and criticized a district court for calling on the government to state its reasons where the defendant had merely detailed his own cooperation and compared it to that of other defendants.[10] 219 F.3d at 342. Therefore, the defendant has failed to carry his burden to show that the government's refusal to move for downward departure was improper.

III.     CONCLUSION

A proper Rule 11 hearing was conducted in this case, during which the defendant testified under oath that he understood the mandatory minimum penalty he faced, that he understood the terms of his plea agreement, that no additional promises had been made to him, and that he was satisfied with his attorney. Fourteen months later, the defendant moved for withdrawal of his plea for reasons contradicted by his earlier testimony. Based on review of the record in this case, the Court finds that the defendant's claims are not credible. The Court further finds that the defendant has failed to establish a fair and just reason to justify withdrawal of his guilty plea.

---

[10]Without being ordered by the Court, the government provided its reasons for refusing to file a motion for downward departure in this case. (Doc. No. 46: Response at 13-14). The Court finds the government's decision to be rationally related to legitimate interests, considering the government's assessment that the defendant was not truthful about his own criminal activity, that he did not maintain contact with agents while on bond, and that his information did not lead to the arrest of anyone other than his co-defendant.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Withdraw Plea is

**DENIED**.

Signed: October 16, 2006

Robert J. Conrad, Jr.
Chief United States District Judge